Nos. 12-2910 and 12-3481 *Consolidated*

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

NATIONAL PARKS CONSERVATION ASSOCIATION, VOYAGEURS NATIONAL PARK ASSOCIATION, FRIENDS OF THE BOUNDARY WATERS WILDERNESS, SIERRA CLUB, MINNESOTA CENTER FOR ENVIRONMENTAL ADVOCACY, and FRESH ENERGY

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and LISA P. JACKSON, Administrator, United States Environmental Protection Agency,

Respondents.
_____

PETITION FOR REHEARING
_____

JANETTE K. BRIMMER (MNB #174762)
MATTHEW E. GERHART (WSB #42787)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
(206)-343-7340 | Phone
(206)-343-1526 | Fax
jbrimmer@earthjustice.org
mgerhart@earthjustice.org

*Counsel for Petitioners National Parks Conservation Association, Voyageurs National Park Association, Friends of the Boundary Waters Wilderness, and Sierra Club*

KEVIN REUTHER (MNB #266255)
Minnesota Center for Environmental Advocacy
26 East Exchange Street, Suite 206
Saint Paul, MN  55101
(651)-223-5969 | Phone
kreuther@mncenter.org

*Counsel for Petitioners Minnesota Center for Environmental Advocacy and Fresh Energy*

INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 40 and Local Rule 40A, Petitioners National Parks Conservation Association et al. (collectively, the "Conservation Organizations") petition for rehearing of the Court's opinion and order in the above-captioned case. Under FRAP 40, a party may petition for rehearing where the court has overlooked or misapprehended a point of law or fact. Petitioners respectfully submit that the Court has misapprehended material facts as to the comparison between pollutant reductions under Best Available Retrofit Technology ("BART") and under the Transport Rule and seek rehearing on that specific issue. The Conservation Organizations assert that correct comparison of the actual facts in the record should change the Court's decision.

ARGUMENT FOR PANEL REHEARING

I. THE COURT'S OPINION MISTAKENLY USES POLLUTANT ALLOWANCES INSTEAD OF PROJECTED ACTUAL EMISSIONS UNDER THE TRANSPORT RULE FOR ITS COMPARISON TO BART.

On January 21, 2016, the Court issued an Opinion and Order denying the petition for review of the U.S. Environmental Protection Agency's ("EPA") approval of the Minnesota regional haze state implementation plan (the "Haze Plan" or "Plan"). In its Opinion, the Court rejected both of the Conservation Organization's claims. Of relevance here, the Court denied the Conservation Organization's challenge to EPA's approval of Minnesota's decision to satisfy the best available retrofit technology requirements of the Clean Air Act by relying on a

1

nation-wide trading program called the Transport Rule, rather than requiring source-specific emission limits. Slip Op. at 8-10.[1] Under the Clean Air Act, BART is a source-specific inquiry and requirement, resulting in a decision regarding the best technology for reducing the pollutants that cause haze in National Parks and Wildernesses. *See* 42 U.S.C. § 7491(b)(2)(A) and (g)(2);*see also*, 40 C.F.R. § 51.308(e). Under EPA regulations, a state can rely on a trading program to satisfy the BART requirements only if the program is demonstrated to be better than BART in improving visibility through reducing the emissions that contribute to haze pollution. *See* 40 C.F.R. § 51.308 (e)(2).

In the section of the Opinion regarding BART, the Court begins by acknowledging that the evidence in the record demonstrates the Transport Rule would not be better than BART in Minnesota. Slip Op. at 9 ("True, evidence in the record indicates that source-specific BART may achieve better results in Minnesota."). The Court then states that despite this evidence, "EPA's explanation that the Transport Rule is better than source specific BART is rational." *Id.* The Court supports this conclusion by stating the following:

> Minnesota's **Transport Rule allowances** are 41,981 tons of SO2 and 29,572 tons of NOx. 76 Fed. Reg. at 48,261. Under **BART**, EPA **projected emissions** from Minnesota EGUs in 2014 as 52,075 tons of SO2 and 29,875 tons of NOx. Technical Support Attachment to

---

[1] The Conservation Organizations will cite to the slip opinion in this petition. The Westlaw citation for the decision is 2016 WL 240768 (January 21, 2016).

2

> Comments of Conservation Organizations—Minnesota Regional Haze SIP Approval 11, 17 (Feb. 21, 2012) (based on the EPA's National BART 2014 spreadsheet). These emission projections indicate that the Transport Rule is better than BART. The conservation organizations disagree with EPA's projected emissions under BART. *Id.* The EPA rejected the conservation organizations' numbers, referring to its analysis in the Transport Rule. 77 Fed. Reg. at 34,801-802.

*Id.* at 9-10 (emphasis added).

Petitioners respectfully submit that in this portion of the Opinion, the Court misapprehended material facts concerning the emissions under the Transport Rule as compared to emissions under BART. The Court mistakenly used the emission **allowances** that facilities were to receive under the Transport Rule, rather than EPA's **projections of actual pollutant emissions** under the Transport Rule when the Court determined whether EPA's explanation that the Transport Rule will be better than BART is supported by the record. The Court compared apples to oranges, leading to an inaccurate and incorrect comparison.

The Transport Rule is a trading program, meaning facilities receive emission allowances that effectively authorize, rather than restrict, emissions, an important distinction when assessing the adequacy of pollutant control alternatives to BART. *See* 76 Fed. Reg. 48,208, 48,271-72 (Aug. 8, 2011). Under the Transport Rule trading scheme, facilities must have one allowance for every ton of $SO_2$ or $NO_x$ they emit, and can purchase allowances from other facilities (including facilities in other states that may or may not affect the same Class I areas) in order to emit

3

more pollution than their initial allowances entitle them to emit. *See id.* In other words, the allowances under the Transport Rule do not constrain or limit emissions from Minnesota power plants and do not represent "emission projections" showing that the Transport Rule is better than BART as asserted in the Opinion.

By contrast, source-specific BART is an enforceable emission limit or restriction on pollution, not a pollutant allowance. *See* Guidelines for BART Determinations Under the Regional Haze Rule, 40 C.F.R. pt 51, App. Y § (V) ("To complete the BART process, you must establish enforceable emission limits [for each source of pollutants subject to BART] that reflect the BART requirements and require compliance within a given period of time."). In contrast to the Transport Rule, once a source-specific BART limit has been established, the facility cannot purchase the right to emit more pollution than the BART emission limit. This distinction is important in the haze context because particular sources affect particular National Parks and Wilderness areas.

Given the differences between the Transport Rule and source-specific BART, the Court's comparison of the Transport Rule allowances to BART emission limits is a comparison of apples to oranges not contemplated by Clean Air Act requirements for best achievable emission limits. The only accurate, apples-to-apples comparison is between projected pollutant emissions—*not*

4

emission trading allowances—under the Transport Rule and projected pollutant emissions under BART.

Indeed, EPA itself has never used the Transport Rule pollution emission allowances the Court used in its Opinion to compare the Transport Rule to BART. Instead, EPA used a model, called the Integrated Planning Model, to forecast actual pollutant emissions from facilities under the Transport Rule. 77 Fed. Reg. 33,642, 33,649 (June 7, 2012) ("To estimate emissions expected from the scenarios described in section IV, we used the Integrated Planning Model (IPM). The IPM was used in this case to evaluate the emissions impacts of the described scenarios limiting the emissions of SO2 and NOX from EGUs."). EPA then compared emissions predicted by the IPM model under the Transport Rule to emissions under BART. *Id.* ("To assess the air quality metrics that are part of the two-pronged test, we used the IPM emission projections as inputs, to an air quality model to determine the impact of ''Transport Rule + BART elsewhere'' and ''Nationwide BART'' controls on visibility in the affected Class I areas."). EPA did not compare the Transport Rule pollutant allowances to BART.

The Conservation Organizations, in their analysis of the Minnesota Haze Plan, used the same numbers that EPA used and demonstrated that BART will result in better haze pollution reduction than the Transport rule. NPCA Appendix

5

pp. 184-85, 192. Similarly, the Federal Land Managers compared apples to apples, using EPA's own IPM modeling to conclude that:

> [f]or Minnesota, we find CSAPR [Transport Rule] to be more lenient than both [the State's] original, and our recommended lower emitting, source-specific BART limits. It is clear that the source-specific BART limits provide the greatest visibility improvement . . . [w]e do not agree that CSAPR [Transport Rule] is better than source-specific BART in Minnesota. No state-specific demonstration has been made that we are aware of.

NPCA 89, 91. EPA never disputed this evidence, but rather argued it nonetheless had the authority to approve the Transport Rule as an alternative to BART. *See, e.g.,* 77 Fed. Reg. at 34,801, 34,803 (June 12, 2012).

EPA could not, and did not, cite the numbers used by the Court to explain EPA's conclusion that the Transport Rule would be better than BART in Minnesota. Therefore, the Court mistakenly upheld EPA's action on the basis of an explanation which EPA never provided. *Cf. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("We may not supply a reasoned basis for the agency's action that the agency itself has not given." (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947))).

II.  USING THE CORRECT EMISSIONS PROJECTIONS ACTUALLY MODELED AND USED BY EPA SHOWS THAT THE TRANSPORT RULE IS IN FACT NOT BETTER THAN BART.

The correct numbers—EPA's projected actual emissions—tell a different story than the pollutant numbers mistakenly referenced by the Court in its Opinion.

6

As the table below demonstrates, when correct projected actual emission numbers are used, it shows the Transport Rule is not better than BART for Minnesota.

**Comparison of $NO_x$ Emissions in 2014 Using the Court's vs. EPA's Numbers[2]**

|  | Court's Opinion | EPA Estimate |
| --- | --- | --- |
| Transport Rule Emissions | 29,572[3] | 30,838[4] |
| BART Emissions | 29,875[5] | 29,875[6] |
| Transport Rule Better than BART? | YES | NO |

---

[2] The Court also used the incorrect numbers to compare $SO_2$ emissions under the Transport Rule and BART, although the situation is more complicated than for $NO_x$. For $SO_2$ emissions, the Court made two separate mistakes. First, as with NOx, the Court cited emission allowances rather than projected emissions under the Transport Rule. Second, the Court compared emissions from all facilities subject to the Transport Rule to the smaller set of facilities subject to BART, rather than comparing the same set of facilities under each program. The correct numbers are that the five Minnesota facilities subject to BART were projected to emit 19,633 tons of $SO_2$ under the Transport Rule and 7,210 tons of $SO_2$ under BART in 2014. *See* NPCA 194, Table 6. Thus, the record reflects that the Transport Rule is not better than BART for $SO_2$ emissions from Minnesota facilities as well as for NOx.

[3] Slip Op. at 9.

[4] NPCA Appendix p. 192; *see also* EPA, Results of the Integrated Planning Model (IPM) for this Proposed Action, "CSAPR+BART 2014, Unit Specific Results (Excel file)," *available at* http://www3.epa.gov/visibility/actions.html.

[5] Slip Op. at 10.

[6] NPCA Appendix p. 192; *see also* EPA, Results of the Integrated Planning Model (IPM) for this Proposed Action, "CSAPR+BART 2014, Unit Specific Results (Excel file)," *available at* http://www3.epa.gov/visibility/actions.html.

7

Critically, the numbers above use *only* EPA's estimate of actual emissions under BART, not the Conservation Organizations' estimates or the Federal Land Managers' estimates. It is true that the Conservation Organizations argued that BART would result in even lower emissions, but the Conservation Organizations also demonstrated that even under EPA's own estimates of pollutant emissions under BART (shown in the table above), the Transport Rule is not better than BART in Minnesota.

The Court misapprehended material facts concerning the comparison of emissions under the Transport Rule compared to emissions under BART for Minnesota facilities, mistakenly relying on figures for Transport Rule pollutant allowances that neither EPA nor the Conservation Organizations cited in their briefs or in the rulemaking. And importantly, the Court used numbers that do not reflect what the Court says they reflect—projected emissions under the Transport Rule. The correct numbers, which EPA used in its rulemaking, which the Federal Land Managers relied on, and which the Conservation Organizations cited in their comments to show the Transport Rule is not better than source-specific BART, tell the opposite story of what the Court says in its Opinion. Using EPA's own estimates of project pollutant emissions under the Transport Rule and BART, the record shows that the Transport Rule is not better than BART for Minnesota.

8

Because of the mistake in the numbers referenced, the Conservation Organizations respectfully request that the Court grant panel rehearing and reconsideration on this particular issue in order to consider the matter using the correct comparison of pollutant emissions. The Conservation Organizations submit that rehearing and reconsideration using the correct emissions numbers, will show EPA's conclusion that the Transport Rule is better than BART is directly contrary to the evidence showing that the Transport Rule would lead to higher emissions than source-specific BART in Minnesota, and that EPA's approval of Minnesota's reliance on the Transport Rule to satisfy the BART requirements has no rational basis in the record and is therefore arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, the Conservation Organizations respectfully request that the Court grant the petition for panel rehearing, find that EPA provided no rational explanation for its conclusion that the Transport Rule is better than BART for Minnesota facilities, and remand the Minnesota regional haze state implementation plan back to EPA for correction.

Respectfully submitted this 29th day of February, 2016.

*s/ Janette K. Brimmer*
JANETTE K BRIMMER (MNB #174762)
MATTHEW E. GERHART (WSB #42787)
Earthjustice
705 Second Avenue
Suite 203
Seattle, Washington 98104
(206)-343-7340 | Phone
(206)-343-1526 | Fax
jbrimmer@earthjustice.org
mgerhart@earthjustice.org

*Counsel for Petitioners National Parks Conservation Association, Voyageurs National Park Association, Friends of the Boundary Waters Wilderness, and Sierra Club*

*s/ Janette K. Brimmer for\**
KEVIN REUTHER (MNB #266255)
(\*Signature with permission via e-mail)
Minnesota Center for Environmental Advocacy
26 East Exchange Street, Suite 206
Saint Paul, MN  55101
(651)-223-5969
kreuther@mncenter.org

*Counsel for Petitioners Minnesota Center for Environmental Advocacy and Fresh Energy*

10

CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the state of Washington. I am over 18 years of age and not a party to this action. My business address is 705 Second Avenue, Suite 203; Seattle, Washington 98104-1711.

On February 29, 2016, I served a true and correct copy of Petitioners'

*Petition for Rehearing* on the following parties:

| David A. Carson<br>Senior Counsel<br>United States Department of Justice<br>999 18th Street, Suite 370, South Terrace<br>Denver, CO 80202<br>(303) 844-1349 \| Phone<br>(303) 844-1350 \| Fax<br>david.a.carson@usdoj.gov<br>*Attorney for Respondent* | ☐ via facsimile<br>☐ via overnight courier<br>☐ via first-class U.S. mail<br>☐ via hand delivery<br>☐ via e-mail<br>☒ via Court ECF system |
|---|---|
| Angeline Purdy<br>United States Department of Justice<br>PO Box 7611<br>Washington, DC 20044<br>(202) 514-0996 \| Phone<br>(202) 514-8865 \| Fax<br>angeline.purdy@usdoj.gov<br>*Attorney for Respondent* | ☐ via facsimile<br>☐ via overnight courier<br>☐ via first-class U.S. mail<br>☐ via hand delivery<br>☐ via e-mail<br>☒ via Court ECF system |

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of February, 2016, at Seattle, Washington.

*s/ Eudora Powell*
EUDORA POWELL

1