# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2910
_____

National Parks Conservation Association; Voyageurs National Park Association; Friends of the Boundary Waters Wilderness; Sierra Club; Minnesota Center for Environmental Advocacy; Fresh Energy

*Petitioners*

v.

Gina McCarthy, Administrator, United States Environmental Protection Agency; United States Environmental Protection Agency

*Respondents*

_____

No. 12-3481
_____

National Parks Conservation Association; Voyageurs National Park Association; Friends of the Boundary Waters Wilderness; Sierra Club; Minnesota Center for Environmental Advocacy; Fresh Energy

*Petitioners*

v.

Gina McCarthy, Administrator, United States Environmental Protection Agency; United States Environmental Protection Agency

*Respondents*

_____

Petition for Review of an Order of the
Environmental Protection Administration

_____

Submitted: September 23, 2015
Filed: March 14, 2016

_____

Before RILEY, Chief Judge, BYE and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

On June 12, 2012, EPA approved the Minnesota Regional Haze State Implementation Plan. Six conservation organizations[1] petition for review of the Plan. Having jurisdiction under 42 U.S.C. § 7607(b)(1), this court denies the petition.

I.

A.

A national goal is natural visibility in "mandatory class I Federal areas." **42 U.S.C. § 7491(a)(1)**. States must revise their environmental plans to include "measures as may be necessary" for reasonable progress toward the national goal. **§ 7491(b)(2)**. Some major stationary facilities that emit "any air pollutant which may reasonably be anticipated to cause or contribute to any impairment of visibility in [class I Federal areas]" must install and operate the best available retrofit technology ("BART"). **§ 7491(b)(2)(A)**.

---

[1]National Parks Conservation Association, Voyageurs National Park Association, Friends of the Boundary Waters Wilderness, Sierra Club, Minnesota Center for Environmental Advocacy, and Fresh Energy.

-2-

BART is "an emission limitation based on the degree of reduction achievable through the application of the best system of continuous emission reduction for each pollutant which is emitted by an existing stationary facility." **40 C.F.R. § 51.301**. When implementing BART, the state must consider five statutory factors: "the costs of compliance, the energy and nonair quality environmental impacts of compliance, any existing pollution control technology in use at the source, the remaining useful life of the source, and the degree of improvement in visibility" from BART. **42 U.S.C. § 7491(g)(2)**.

In 1999, EPA offered an alternative to BART if "the State demonstrates that an emissions trading program or other alternative will achieve greater reasonable progress toward natural visibility conditions." **Regional Haze Regulations**, 64 Fed. Reg. 35,714, 35,767 (July 1, 1999). *See also* **40 C.F.R. § 51.308(e)(2)**. For BART alternatives, a state must submit a "demonstration that the emissions trading program or other alternative measure will achieve greater reasonable progress than would have resulted from the installation and operation of BART at all sources subject to BART in the State." **§ 51.308(e)(2)(i)**. The demonstration includes several steps. **§ 51.308(e)(2)(i)(A)-(E)**. A state may satisfy the final step of the demonstration by meeting two criteria: "(i) Visibility does not decline in any Class I area, and (ii) There is an *overall* improvement in visibility, determined by comparing the average differences between BART and the alternative over all affected Class I areas." **§ 51.308(e)(3)** (emphasis added).

On June 7, 2012, EPA determined that the Transport Rule—also known as the Cross-State Air Pollution Rule ("CSAPR")—is "better than BART." **Regional Haze: Alternatives to Source-Specific Best Available Retrofit Technology (BART) Determinations**, 77 Fed. Reg. 33,642, 33,648 (June 7, 2012) (Better than BART Rule). According to EPA, the Transport Rule achieves "greater reasonable progress towards the national goal of achieving natural visibility conditions in Class I areas than source-specific Best Available Retrofit Technology (BART) in those states

Appellate Case: 12-2910     Page: 3     Date Filed: 03/14/2016 Entry ID: 4377115

covered by the Transport Rule." *Id.* at 33,643. States subject to the Transport Rule may use its emissions-trading program instead of source-specific BART. **40 C.F.R. § 51.308(e)(4)**. *See EPA v. EME Homer City Generation, L.P.*, 134 S. Ct. 1584, 1610 (2014), *approving* **76 Fed. Reg. 48,208** (Aug. 8, 2011) (Transport Rule).

In addition to BART requirements, a state must propose a long-term strategy plan for regional haze, including "enforceable emissions limitations, compliance schedules, and other measures as necessary to achieve the reasonable progress goals established by States having mandatory Class I Federal areas." **40 C.F.R. § 51.308(d)(3)**. States must "establish goals . . . that provide for reasonable progress towards achieving natural visibility conditions" at Class I areas. **§ 51.308(d)(1)**. In establishing such goals, a state must consider four factors: "the costs of compliance, the time necessary for compliance, the energy and non-air quality environmental impacts of compliance, and the remaining useful life of any potentially affected sources, and include a demonstration showing how these factors were taken into consideration in selecting the goal." **§ 51.308(d)(1)(i)(A)**. The state must also "[a]nalyze and determine the rate of progress needed to attain natural visibility conditions by the year 2064." **§ 51.308(d)(1)(i)(B)**.

"If the state's reasonable progress goals provide for a slower rate of improvement than necessary to achieve natural visibility conditions by 2064, the state must demonstrate 'that the rate of progress for the implementation plan to attain natural conditions by 2064 is not reasonable; and that the progress goal adopted by the state is reasonable.'" *North Dakota v. EPA*, 730 F.3d 750, 756 (8th Cir. 2013), *quoting* **40 C.F.R. § 51.308(d)(1)(ii)**. "The reasonable progress goals established by the State are not directly enforceable but will be considered by the Administrator in evaluating the adequacy of the measures in the implementation plan to achieve the progress goal adopted by the State." **40 C.F.R. § 51.308(d)(1)(v)**.

-4-

B.

Minnesota has two Class I federal areas: the Boundary Waters Canoe Area Wilderness and Voyageurs National Park. **Proposed Rule; Minnesota; Regional Haze**, 77 Fed. Reg. 3,681, 3,686 (Jan. 25, 2012). Minnesota has five electric-generating units (EGUs) subject to BART that pollute these Class I areas (and also affect the visibility in Isle Royale National Park in Michigan). *Id.* at 3,686, 3,688. For these EGUs, Minnesota proposed using the Transport Rule rather than source-specific BART. *Id.* at 3,691. Days after EPA determined that the Transport Rule was "better than BART," EPA approved the Minnesota Plan, stating that "it is acceptable for Minnesota to substitute participation in the [Transport Rule] trading programs for source-specific BART." **Approval and Promulgation of Air Quality Implementation Plans; Minnesota; Regional Haze**, 77 Fed. Reg. 34,801, 34,803 (June 12, 2012).

EPA also approved Minnesota's reasonable-progress goals to "attain natural visibility conditions in Boundary Waters in 2093 and in Voyageurs in 2177." *Id.* Minnesota must review and reassess these reasonable-progress goals and its Plan "by July 31, 2018 and every ten years thereafter." **40 C.F.R. § 51.308(f)**.

The conservation organizations challenge EPA's approval of Minnesota's decision to use the Transport Rule in place of source-specific BART, and Minnesota's reasonable-progress goals.

II.

The conservation organizations petition for review under 42 U.S.C. § 7607(b)(1). Neither side disputes this court's jurisdiction to consider the reasonable-progress goals in the Plan. EPA, however, asserts that its approval of the Plan based on the Transport Rule is a nationally-applicable action that must be

-5-

reviewed in the D.C. Circuit. The conservation organizations counter that EPA's approval of the Plan—including Minnesota's reliance on the Transport Rule—is a local or regional action that must be reviewed by this court.

Section 7607(b)(1) has three parts. First, only the D.C. Circuit may review a petition for review of "nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter." **42 U.S.C. § 7607(b)(1)**. Second, only an appropriate circuit court of appeals may review a "petition for review of the Administrator's action . . . which is locally or regionally applicable." *Id.* This includes petitions for review of the "Administrator's action in approving or promulgating any implementation plan under section 7410." *Id.* However, for a "locally or regionally applicable" action, only the D.C. Circuit may review the petition "if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination." *Id. See* ***Lion Oil Co. v. EPA***, 792 F.3d 978, 982 (8th Cir. 2015) (holding this court had jurisdiction to hear a locally or regionally applicable action because EPA did not publish a finding of nationwide scope or effect).

Section 7607(b)(1) thus has two routes for review in the D.C. Circuit. ***Am. Rd. & Transp. Builders Ass'n v. EPA***, 705 F.3d 453, 455 (D.C. Cir. 2013). First, "EPA's regulations may themselves be nationally applicable," and second, "EPA may determine that the otherwise locally or regionally applicable regulations have a nationwide scope or effect" then find and publish the determination. *Id.* EPA's "'action in approving or promulgating any implementation plan' is the prototypical 'locally or regionally applicable' action that may be challenged only in the appropriate regional court of appeals." *Id. See also* ***ATK Launch Sys., Inc. v. EPA***, 651 F.3d 1194, 1199 (10th Cir. 2011) (describing an action challenging a state plan as a "purely local action" and "an undisputably regional action"). EPA has not found and published a determination of nationwide scope or effect for the Minnesota Plan; therefore, the D.C. Circuit has jurisdiction of this case only if EPA's action is

Appellate Case: 12-2910     Page: 6     Date Filed: 03/14/2016 Entry ID: 4377115

"nationally applicable." The Minnesota Plan is a "prototypical 'locally or regionally applicable' action" that must be challenged in the regional court of appeals. *See* ***Am. Rd. & Transp. Builders***, 705 F.3d at 455.

True, the Third Circuit has ruled that it has no jurisdiction of a challenge to "the Transport Rule or *Pennsylvania's reliance on it.*" ***Nat'l Parks Conservation Ass'n v. EPA***, 803 F.3d 151, 160 (3d Cir. 2015) (emphasis added). More instructive is the Seventh Circuit's *Madison Gas* case. Madison Gas challenged "an element of a national program," a program that involved "allocating allowances to all the electrical generating plants in the nation, and all the allocations [were] listed . . . in a single table in the regulations." ***Madison Gas & Electric Co. v. EPA***, 4 F.3d 529, 530-31 (7th Cir. 1993). The challenge was "based upon an entirely local factor," specifically "that the allowances [were] based on an incorrect determination of Madison's generating capacity." ***Id.*** The Seventh Circuit noted that the petition "if successful will have no impact on the overall program except insofar as the award of additional allowances might pierce the national ceiling." ***Id.*** at 531. Because this was "too speculative to warrant forcing the case into the D.C. Circuit," the Seventh Circuit had jurisdiction of the petition for review. ***Id.***

As in *Madison Gas*, the conservation organizations here challenge "an element of a national program . . . based upon an entirely local factor": whether the Transport Rule as applied to the five EGUs in the Minnesota Plan is "better than BART." *See also* ***United States v. Cinergy Corp.***, 458 F.3d 705, 707 (7th Cir. 2006) (finding jurisdiction of a challenge because the "validity of the regulation is not in issue, just its meaning"); ***Texas v. EPA***, 2011 WL 710598, at *3 (5th Cir. Feb. 24, 2011) (unpublished order) ("Determining whether an action by the EPA is regional or local on the one hand or national on the other should depend on the *location of the persons or enterprises that the action regulates* rather than on where the effects of the action are felt.") (emphasis added). This court has jurisdiction to consider a petition for

-7-

Appellate Case: 12-2910     Page: 7     Date Filed: 03/14/2016 Entry ID: 4377115

review of the Minnesota Plan, including the claim that EPA's approval of the Transport Rule for the five EGUs is "arbitrary or capricious."

III.

This court sets aside EPA's action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." ***Sierra Club v. EPA***, 252 F.3d 943, 947 (8th Cir. 2001), *quoting* **5 U.S.C. § 706(2)(A)**. "An agency decision is arbitrary or capricious if: the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." ***Lion Oil***, 792 F.3d at 982. Under this narrow standard, "a court is not to substitute its judgment for that of the agency," yet "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" ***Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.***, 463 U.S. 29, 43 (1983), *quoting* ***Burlington Truck Lines v. U.S.***, 371 U.S. 156, 168 (1962). "If an agency's determination is supportable on any rational basis, [a court] must uphold it," especially "when an agency is acting within its own sphere of expertise." ***Voyageurs Nat'l Park Ass'n v. Norton***, 381 F.3d 759, 763 (8th Cir. 2004).

A.

The conservation organizations attack EPA's approval of the Minnesota Plan, claiming the Transport Rule allowances in the Plan are not "better than BART."

Minnesota proposed to use the Transport Rule instead of BART for five EGUs. **77 Fed. Reg.** at 3,689. EPA conducted "a technical analysis . . . to determine whether compliance with the Transport Rule would satisfy the requirements of the [Regional

-8-

Appellate Case: 12-2910     Page: 8     Date Filed: 03/14/2016 Entry ID: 4377115

Haze Rule] addressing alternatives to BART." *Id.* at 3,683. Approving the Minnesota Plan, EPA relied on two national rulings. *See* **76 Fed. Reg. 48,208** (Aug. 8, 2011) (Transport Rule); **77 Fed. Reg. 33,642** (June 7, 2012) (Better than BART Rule). A state subject to the Transport Rule "need not require BART." **40 C.F.R. § 51.308(e)(4)** (codifying the two rulings). EPA decided that Minnesota properly exercised its discretion as a Transport Rule state by using it for the five EGUs. **77 Fed. Reg.** at 34,801-802. It concluded that Minnesota's "compliance with the Transport Rule will provide for greater reasonable progress toward improving visibility than source-specific BART controls for EGUs." **77 Fed. Reg.** at 3,683. In its final approval, EPA reiterated that the Transport Rule is "an alternative program to source-specific BART for EGUs" and referred to the analysis in the Better than BART Rule. **77 Fed. Reg.** at 34,804.

True, evidence in the record indicates that source-specific BART may achieve better results in Minnesota. The Forest Service was "concerned that the inclusion of Minnesota in the Cross-State Air Pollution Rule (CSAPR) would *likely mean* that the air pollution control equipment proposed for Minnesota power plants under BART, such as [the largest power plant], would not be installed. . . . It *appears* that CSAPR will not drive any emission reductions in Minnesota. Based on the spreadsheet from EPA's website . . . , the current emissions for Minnesota are already very close to its 2014 emission budgets under CSAPR." (Emphasis added). The Forest Service later emphasized, "For Minnesota we find CSAPR is more lenient than both your original, and our recommended lower emitting, source-specific BART limits. It is clear that the source-specific BART limits provide the greatest visibility improvement and request that you use the values the EPA and FLMs proposed."

However, EPA's explanation that the Transport Rule is better than source-specific BART is rational. Under BART, EPA projected that 2014 emissions from those Minnesota EGUs subject to the Transport Rule and in EPA's model would be 52,075 tons of $SO_2$ and 29,875 tons of $NO_x$. **Technical Support Attachment to**

Appellate Case: 12-2910     Page: 9     Date Filed: 03/14/2016 Entry ID: 4377115

**Comments of Conservation Organizations—Minnesota Regional Haze SIP Approval** 11, 17 (Feb. 21, 2012) (based on the EPA's National BART 2014 spreadsheet). Under the Transport Rule, EPA projected that 2014 emissions from those Minnesota EGUs subject to the Transport Rule and in EPA's model would be 45,499 tons of $SO_2$ and 30,838 tons of $NO_x$. *Id.* EPA's analysis also shows that, under the Transport Rule as compared to BART, there is an overall improvement in visibility in the Minnesota Class I areas. *See* **77 Fed. Reg.** at 33,644. Compared to BART, the Transport Rule achieves greater visibility improvement for the 20% worst-visibility days and equivalent improvement for the 20% best-visibility days in Boundary Waters and Voyageurs. **Technical Support Attachment** at 21. The conservation organizations disagree with EPA's numbers. *Id.* at 11, 17, 22. EPA rejected the conservation organizations' numbers, referring to its analysis in the Transport Rule. **77 Fed. Reg.** at 34,801-802. EPA is acting within its sphere of expertise and has a rational basis to conclude that the Transport Rule is better than BART.

The Transport Rule seeks to achieve greater, overall reasonable progress towards improving visibility than source-specific BART. The D.C. Circuit has rejected the claim "that the Clean Air Act requires EPA to ensure that any BART-alternative improves visibility at least as much as BART at every Class I area and in all categories of days." ***Utility Air Regulatory Group v. EPA***, 471 F.3d 1333, 1340 (D.C. Cir. 2006) (analyzing the Transport Rule's predecessor—the Clean Air Interstate Rule). Here, Minnesota chose to use the Transport Rule, which EPA determined will achieve greater overall reasonable progress than source-specific BART. "Maybe time will prove [petitioner] right on some of these fronts; maybe not. But arbitrary and capricious review does not ask who is right. It asks whether the EPA followed a defensible process in assessing who is right." ***St. Mary's Cement, Inc. v. EPA***, 782 F.3d 280, 286 (6th Cir. 2015). EPA did not rely on factors that Congress did not intend it to consider, did not entirely fail to consider an important

Appellate Case: 12-2910    Page: 10    Date Filed: 03/14/2016 Entry ID: 4377115

aspect of the problem, and did not offer an explanation that runs counter to the evidence before the agency.

EPA's approval of Minnesota's reliance on the Transport Rule was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

B.

The conservation organizations also seek review of the reasonable-progress goals in the Minnesota Plan.

EPA approved the reasonable-progress goals in the Plan, finding Minnesota had demonstrated it was not reasonable to meet the 2064 target for the first implementation period. **77 Fed. Reg.** at 34,803. Although the goals do not meet the 2064 target for natural visibility conditions, this does not mean EPA arbitrarily approved Minnesota's demonstration.

Approving the Plan, EPA explained that the "state followed the proper approach in setting its [reasonable-progress goals] through 2018" by considering the four factors in the regulations. *Id.* Minnesota considered "the costs of compliance, the time needed for compliance, the energy and non-air quality environmental impacts, and the remaining useful life of the facility." *Id.* EPA noted that the "visibility improvement at issue here is the visibility improvement for the first implementation period, which extends until July 31, 2018." *Id.* Much of the pollution affecting Voyageurs and Boundary Waters is not within Minnesota's control; "Minnesota focused on the emissions it can control." **77 Fed. Reg.** at 3,690. Minnesota's contribution to light extinction for Boundary Waters is 28% and for Voyageurs, 31%. **Minnesota Pollution Control Agency, Regional Haze State Implementation Plan** 84 (Dec. 2009).

EPA determined that Minnesota adequately demonstrated—given the uncontrollable causes and the weighing of the four prescribed factors—that its progress goals are reasonable. **77 Fed. Reg.** at 34,803. Just as in the *North Dakota* case, "EPA's determination on this matter is entitled to judicial deference, as it involves 'technical matters within its area of expertise.'" *North Dakota*, 730 F.3d at 766. North Dakota there determined that a large power plant did not need additional pollution control technologies in order to achieve reasonable progress. *Id.* at 764. EPA disapproved this determination, "concluding that the decision not to install additional controls was unreasonable in light of the State's admission that it could not meet the uniform rate of progress to restore natural visibility . . . by 2064." *Id.* at 765. On petition for review, this court concluded that EPA's disapproval was not arbitrary or capricious because EPA "demonstrated that the visibility model used by the State [in evaluating the need of additional controls at the power plant] would serve . . . to maintain current degraded conditions" *Id.* at 766.

Similar to the *North Dakota* case, the conservation organizations stress that EPA erred by approving reasonable-progress determinations that did not include additional controls at two large Minnesota EGUs. Unlike in *North Dakota*, EPA has set forth plans to address the pollution emitted from one of the two EGUs. That EGU is a source of RAVI ("reasonably attributable visibility impairment" directly from a single source or a small number of sources). *See* **40 C.F.R. § 51.301**. "EPA intends to act on RAVI BART in a separate action" for this facility. **77 Fed. Reg.** at 34,806, 34,804. In approving Minnesota's reasonable-progress goals, EPA considered that additional controls may be needed at the facility and committed to a regulatory process that will result in a plan to address those controls. For the second EGU, EPA determined that Minnesota properly relied on Transport Rule allowances in place of BART. **77 Fed. Reg.** at 34,803. EPA's approval of the Plan articulates a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

-12-

Because EPA acted rationally within its sphere of expertise, the conservation organizations' petition for review of the Minnesota Haze Plan's reasonable-progress goals is denied.

\* \* \* \* \* \* \*

Petition for review is denied.

BYE, Circuit Judge, concurring in the result.

To the extent the six conservation organizations involved in this petition for review contend the Transport Rule is *not* better than source-specific BART with respect to Minnesota's Regional Haze State Implementation Plan, I find this case indistinguishable from the contentions advanced by the conservation groups who challenged Pennsylvania's Plan in National Parks Conservation Ass'n v. United States Environmental Protection Agency, 803 F.3d 151 (3d Cir. 2015). I also believe the Third Circuit's jurisdictional analysis is correct. Thus, to the extent the conservation organizations claim source-specific BART is better than the Transport Rule as applied to Minnesota's Plan, I conclude we lack jurisdiction. In all other respects, I agree with my colleagues that the EPA acted rationally in approving Minnesota's Plan, and thus concur in the result.

_____